IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA,

vs.                                 Case Nos.:    1:12cr12/MW/GRJ
                                                  1:15cv156/MW/GRJ

ROBERT STANLEY ZIOLKOWSKI

_____

## <u>REPORT AND RECOMMENDATION</u>

This matter is before the Court upon Petitioner Robert Stanley
Ziolkowski ("Petitioner")'s Second Amended Motion under 28 U.S.C. §
2255 to Vacate, Set Aside, or Correct Sentence by a person in Federal
Custody" and Memorandum of Law in Support thereof (ECF No. 96); the
Government's Response (ECF No. 100); and Petitioner's Reply. (ECF No.
104.) The case was referred to the undersigned for the issuance of all
preliminary orders and any recommendations to the district court regarding
dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b)
and FED. R. CIV. P. 72(b). After a review of the record and the arguments
presented, the Court concludes that Petitioner has not raised any issue
requiring an evidentiary hearing and that the § 2255 Motion should be
denied. *See* Rules 8(a) and (b) Governing Section 2255 Cases.

# I.  BACKGROUND

On January 30, 2012, the Alachua County Sheriff's Office ("ACSO"), along with several other law enforcement agencies, commenced an investigation targeting suspects who use the internet with the intent of meeting children for the purpose of sexual conduct. (Final Pre-Sentence Investigation Report ("PSR"), ECF No. 42 at ¶ 7.) On February 1, 2012, Detective Jeff Brown with the Pensacola Police Department ("PPD") posted an advertisement on the internet E-Commerce site Craigslist. *Id.* at ¶ 8. The advertisement was titled "Need help w/Yung One – mw4m – 99 (Val)." *Id.* Also included in the advertisement was the following statement: "Me and my wife need help with our daughter and a coming of age ceremony." *Id.*

On the same day, "Bob Walsh," who was later identified as Petitioner, responded to the advertisement with interest. *Id.* Detective Brown, acting under cover as "Mark," replied to Petitioner, and email and text-message correspondence between Detective Brown and Petitioner followed. Detective Brown told Petitioner that he, his wife "Nancy," and their eleven-year-old daughter "April" practiced the Wiccan religion. *Id.* at ¶ ¶ 10-12. Detective Brown explained to Petitioner that April was "coming of age" and

needed to "be with a man" in order to complete a Wiccan ritual to obtain status as a high priestess in the religion. *Id.*

Petitioner stated he was a forty-seven-year-old resident of Adel, Georgia. *Id.* at ¶ ¶ 13-14. Petitioner further stated his intent to have sex with April, and Detective Brown and Petitioner made arrangements for Petitioner to travel to Gainesville, Florida, from Georgia on February 2, 2012, to complete the ritual. *Id.* at ¶ 17. Detective Brown gave Petitioner directions to a gas station near the target residence where Petitioner was subsequently arrested. *Id.*

Petitioner was taken into custody, photographed, and searched. *Id.* Law enforcement officers found two condoms in his left front pocket. *Id.* Petitioner admitted to law enforcement officers that he had driven to Gainesville for the express purpose of having sex with an eleven-year-old female. *Id.* at ¶ 18. A routine criminal history search revealed that, in 1974, Petitioner was charged[1] in the state of New York with the rape of a victim under the age of seventeen. *Id.* at ¶ 15.

---

[1] In that case, Petitioner pleaded guilty to third-degree rape. *See* PSR at ¶ 39.

Case Nos.: 1:12cr12/MW/GRJ; 1:15cv156/MW/GRJ

On March 27, 2012, a grand jury returned a one-count indictment charging Petitioner with traveling from Georgia to Florida with the intention of having sex with a child under the age of sixteen, in violation of 18 U.S.C. § 2423(b) and (f) on a date certain. (ECF No. 2.) Petitioner was arrested and arraigned on the charge on April 5, 2012. (ECF Nos. 7 & 8.) Petitioner subsequently retained attorney Daniel Francis Daly to aid in his defense. (ECF No. 11.)

Petitioner, through counsel, moved to dismiss the indictment on the grounds that the Government violated his due process rights by engaging in outrageous conduct to induce him to commit the crime charged in the indictment. (ECF No. 20.) Petitioner further sought suppression of two prior rape convictions from the 1970s on the grounds that the crimes are too remote and dissimilar to meet the requirements of Rule 404(b) of the Federal Rules of Evidence. *Id.* The Court subsequently denied the motion on both grounds. (ECF No. 29.)

Trial commenced on December 3, 2012. The jury returned a guilty verdict two days later on December 5. (ECF No. 39.) The PSR reflected that Petitioner had a base offense level of 36 and a criminal history

category of V. (ECF No. 42 at ¶ 74.) The applicable guidelines range was

292 to 365 months. *Id.* However, because the statutorily authorized

maximum sentence is less than the maximum of the applicable guidelines

range, the applicable guidelines range became 292 to 360 months. *Id.* The

Court sentenced Petitioner to 360 months of imprisonment, a life term of

supervised release, and a $100 Special Monetary Assessment on April 19,

2013 (ECF No. 46), and entered the judgment against Petitioner on April

29, 2013. (ECF No. 49.) On May 31, 2013, the Court granted Daly's motion

to withdraw as counsel. (ECF No. 63.) Thereafter, the Court appointed,

Assistant Federal Defender, Darren James Johnson, to represent Petitioner

in his appeal.

Petitioner filed an appeal to the Eleventh Circuit Court of Appeals,

arguing that his sentence is procedurally and substantively unreasonable

because the district court failed to adequately address all of the 18 U.S.C. §

3553(a) sentencing factors, failed to give sufficient weight to various

mitigating factors, and that the sentence is greater than necessary to

accomplish the goals of sentencing. (ECF No. 79.) The Eleventh Circuit

issued a written opinion affirming the verdict on July 22, 2014, and issued a

mandate on August 21, 2014. (ECF No. 80.) Petitioner did not file a Petition for Writ of Certiorari with the United States Supreme Court.

## II. ANALYSIS

### A. General Legal Standard

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to Section 2255 are extremely limited. A prisoner is entitled to relief under Section 2255 if the court imposed a sentence that: (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the

Case Nos.: 1:12cr12/MW/GRJ; 1:15cv156/MW/GRJ

alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a Section 2255 motion which have been resolved on direct appeal. *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under Section 2255. *Nyhuis*, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Because a motion to vacate under Section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a Section 2255 motion and will be considered

procedurally barred. *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011). An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." *Lynn*, 365 F.3d at 1232 n.14 (quoting *Mills*, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a Section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." *Lynn*, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of

whether they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016). In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013). In applying *Strickland*, a court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688;

*see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir.

2007). Reviewing courts are to examine counsel's performance in a highly

deferential manner and "must indulge a strong presumption that counsel's

conduct fell within the wide range of reasonable professional assistance."

*Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting

*Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d

1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness

of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir.

1989) (emphasizing that petitioner was "not entitled to error-free

representation"). Counsel's performance must be evaluated with a high

degree of deference and without the distorting effects of hindsight.

*Strickland*, 466 U.S. at 689. To show counsel's performance was

unreasonable, a defendant must establish that "no competent counsel

would have taken the action that his counsel did take." *Gordon v. United*

*States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*,

218 F.3d at 1315. "[T]he fact that a particular defense ultimately proved to

be unsuccessful [does not] demonstrate ineffectiveness." *Chandler*, 218

F.3d at 1314. When reviewing the performance of an experienced trial

counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, a defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*, 466 U.S. at 693). For a court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).

To establish ineffective assistance, Defendant must provide factual

support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (*citing Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective

assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance. A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *Rosin*, 786 F.3d at 877; *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008). Not every claim of ineffective assistance of counsel warrants an evidentiary hearing. *Gordon*, 518 F.3d at 1301

(citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)). To be

entitled to a hearing, a defendant must allege facts that, if true, would prove

he is entitled to relief. *See Hernandez v. United States*, 778 F.3d 1230,

1234 (11th Cir. 2015). A hearing is not required on frivolous claims,

conclusory allegations unsupported by specifics, or contentions that are

wholly unsupported by the record. *See Winthrop–Redin v. United States*,

767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need

not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon

unsupported generalizations") (internal quotation marks omitted); *Peoples

v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004). Even affidavits that

amount to nothing more than conclusory allegations do not warrant a

hearing. *Lynn*, 365 F.3d at 1239. Finally, disputes involving purely legal

issues can be resolved by the court without a hearing.

### B. Petitioner's Ground One

In his first ground for relief, Petitioner asserts Daly rendered

ineffective assistance for improperly litigating the issue of entrapment.

Although Petitioner acknowledges Daly did "bring up" entrapment in a pre-

trial motion, Petitioner argues Daly should have, but failed to, argue that

Petitioner's prior convictions have little probative value because of their temporal remoteness. (ECF No. 96 at 4.) Further, while Petitioner acknowledges that Daly brought up the entrapment defense early in the trial, he alleges Daly "quickly backed off of this idea" without utilizing the case law in *Jacobson v. United States*, 503 U.S. 540 (1992), to support the entrapment defense. *Id.*

The Court disagrees with Petitioner's assessment of Daly's performance. The record reflects Daly filed a pretrial motion to dismiss the indictment, arguing that the Government's enforcement techniques amounted to outrageous government conduct. (ECF No. 20.) The record further reflects the motion sought the exclusion of Petitioner's prior 1970s rape convictions on the grounds that they "are too remote in time and dissimilar to the instant episode to pass the analysis required by FED. R. EVID. 404(b)." *Id.* at 16. This is the precise argument Petitioner alleges Daly neglected to make. Moreover---and contrary to Petitioner's allegation---trial counsel cited *Jacobson*'s discussion of government inducement to violate the law in support of its motion. *Id.* at 13-14.

However, despite Daly's efforts, the Court denied the motion, finding

that the circumstances of this case fall short of requiring dismissal of the indictment as a matter of law on the grounds of outrageous conduct. (ECF No. 29 at 2-3.) Further, the Court determined that if Petitioner's prior convictions involve illicit sex with minors, they are admissible on the grounds that they are probative of his predisposition to engage in sex with minors without the persuasion of the undercover officer, "which Defendant will put in issue by raising an entrapment defense." *Id.* at 5.[2]

Citing the Court's pretrial ruling denying the motion to exclude Petitioner's prior rape convictions and the Government's "promise[] that [it] will defeat any entrapment on the basis of [] predisposition evidence," Daly abandoned the entrapment defense. (Doc. 72 at 5, 15.) Petitioner argues Daly's decision to abandon the defense amounts to ineffective assistance of counsel. It does not.   Based upon the events in this case and the Court's previous ruling denying Petitioner's motion to dismiss the indictment Daly's decision was the product of reasonable professional judgment.

---

[2] The record reflects that, at trial, Daly renewed the motion under Rule 29 on the grounds of outrageous conduct/objective entrapment at the conclusion of the Government's case-in-chief. (ECF No. 72 at 175.) However, the Court denied the motion.

Case Nos.: 1:12cr12/MW/GRJ; 1:15cv156/MW/GRJ

When a defendant raises an entrapment defense, the Government has the burden to show beyond a reasonable doubt that the defendant was predisposed to commit the crime. *United States v. Duran*, 596 F.3d 1283, 1299 (11th Cir. 2010). In this case, the Government made clear that it would attempt to defeat any entrapment defense with evidence of Petitioner's prior rape convictions, which the Court previously had ruled that any convictions involving illicit sex with minors would be admissible. Thus, although Daly moved to dismiss the indictment on the grounds of entrapment, it is evident that he declined to pursue the defense at trial because of the potential risk of prejudice the predisposition evidence posed to Petitioner's defense. It cannot be said that no competent counsel would have taken this course of action.

Moreover, Petitioner fails to establish he was prejudiced by Daly's decision to abandon the entrapment defense because Petitioner has not made any colorable showing that there was evidence of entrapment. Further, Petitioner has not established that the Government would not have defeated the entrapment defense with predisposition evidence of Petitioner's prior rape convictions. Accordingly, Petitioner has failed to

Case Nos.: 1:12cr12/MW/GRJ; 1:15cv156/MW/GRJ

demonstrate that entrapment would have been a successful defense and

that he was prejudiced by Daly's decision not to pursue it. Accordingly, as

to Ground One, Petitioner has failed to make the requisite showing under

*Strickland* to support his claim of ineffective assistance of counsel.

### C. Petitioner's Ground Two

Petitioner next argues his trial and appellate counsel rendered

ineffective assistance for failing to argue that the Supreme Court's decision

in *Johnson v. United States*, 135 S. Ct. 2551 (2015), entitled him to relief.

According to Petitioner, "[b]ecause these prior New York convictions in the

case at bar were used to provide more time in prison for Defendant, there

can be no doubt that the prior convictions caused collateral effect which

resulted in more time in prison." (ECF No. 96 at 8.)

*Johnson* has nothing to do with Petitioner's case. In *Johnson*, the

Supreme Court held that the residual clause of the Armed Career Criminal

Act ("ACCA") is unconstitutionally vague. *Johnson*, 135 S. Ct. at 2563

("imposing an increased sentence under the residual clause of the [ACCA]

violates the Constitution's guarantee of due process"). To the extent

Petitioner is claiming his sentence was "enhanced" by virtue of his prior

criminal convictions that claim is meritless because Petitioner did not receive an enhanced sentence as a "career offender" or as an "armed career criminal" based on his prior convictions. Rather, Petitioner's prior crimes were counted only to compute his Criminal History Category. Accordingly, because Petitioner's challenge to his sentence under *Johnson* has no merit, his counsel cannot be deemed ineffective for failing to raise a meritless issue. Accordingly, Petitioner's *Strickland* claim fails as to Ground Two.

### D. Petitioner's Ground Three

Petitioner's next ground for relief raises various arguments. As the Court understands Petitioner' argument he alleges that his trial and appellate counsel rendered ineffective assistance for failing to disclose to Petitioner the discovery provided by the Government. Petitioner further alleges that "either the [G]overnment or the defense counsel or both withheld discovery documents from [Petitioner]," that "may have included exculpatory evidence which relates directly to a *Brady* violation." (ECF No. 96 at 13.) Finally, Petitioner alleges that Daly, his trial counsel, rendered ineffective assistance by "attempt[ing] to extort additional income" from

Petitioner. *Id.* at 20. The Court will address the extortion argument as a separate ground for relief.

In a claim for ineffective assistance of counsel, Petitioner has the burden of proving that he was prejudiced by trial counsel's allegedly deficient performance. *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000) (citation omitted). That an error had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice. *Id.* (quotation marks omitted). Instead, Petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." A *Brady* violation, thus, occurs where (1) the prosecution suppresses evidence; (2) the evidence is favorable to the defendant; and (3) the evidence is material to the issues at trial. *See Stano*

*v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990). The Supreme Court has stated that evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *United States v. Bagley*, 473 U.S. 667, 682 (1985).

Petitioner asserts that, despite "question[ing] his counsel multiple times," counsel failed to furnish any of the evidence against Petitioner. (Doc. 96 at 14.) He further complains he was not given "data regarding the training of the officers" or a Statement of Work ("SOW") outlining the contractual agreement between the law enforcement agencies involved in the task force that arrested him. *Id.* at 15. Petitioner claims the undisclosed evidence is exculpatory in nature because "it could prove that the Special Agent in Charge (or similar) who was providing federal authority to the Sheriff of other type of County, City, State, or Municipal officer was or was not a proper officer for that kind of authority." *Id.*

Insofar as Petitioner asserts his counsel was ineffective for

withholding the aforementioned documents, Petitioner's claim fails. Even assuming for the sake of argument Petitioner could show that counsel's failure to provide copies of discovery materials amounts to deficient performance, Petitioner fails to demonstrate how revealing these documents to Petitioner would reasonably have changed the result of the proceedings. He states generally that "[d]iscovery is imperative for any criminal defendant, so that the defendant can go through the data and show the defense counsel where the prosecution's case has flaws." *Id.* at 13. However, Petitioner does not identify any specific flaws or demonstrate how him pointing out the flaws would have changed the result of the proceedings. Thus, Petitioner fails to meet his burden of demonstrating prejudice.

Insofar as Petitioner alleges the Government withheld *Brady* evidence, his claim also lacks merit. As an initial matter, Petitioner offers no evidence suggesting the Government suppressed any evidence requested by Petitioner's counsel. Petitioner admits that he does not know whether it was the Government or his counsel who withheld the allegedly exculpatory evidence from him. *Id.* at 14-15. Further, Petitioner fails to demonstrate the

Government withheld *material* evidence. He only refers generally to undisclosed "data" and "contracts" and asserts that a SOW might have revealed the task force lacked authority. Assuming for the sake of argument that these documents exist, Petitioner fails to demonstrate a reasonable probability that, had they been disclosed to the defense, the result of the proceeding would have been different. Accordingly, Petitioner's claim under *Brady* fails.

Finally, Petitioner asserts there is an "issue" regarding the meaning of "consent" and "coming of age" in the text and email correspondence between Petitioner and Detective Brown, the undercover detective. *Id.* at 17. Petitioner asserts "there is no way that this has been properly explored with the failure to disclose the evidence and discovery." *Id.* He alleges Daly should have conducted discovery as to the Wiccan religion and the purported "coming of age" ceremony Petitioner agreed to participate in. *Id.*

While Petitioner expresses his general dissatisfaction with Daly's purported failure to conduct discovery regarding the meaning of consent and the Wiccan religion, however, Petitioner has failed to establish that the failure to explore this information amounts to constitutionally deficient

performance. Further, he fails to demonstrate how the discovery of such information might have changed the outcome of his trial. Whether Petitioner thought he was participating in a Wiccan religious ceremony misses the point of the case. The "ritual" Petitioner traveled to participate in involved engaging in sex with an eleven year old. Accordingly, Petitioner has failed to make the requisite showing under *Strickland* as to Ground Three.

### E. Petitioner's Ground Four

Petitioner next alleges Daly rendered ineffective assistance of counsel when he "attempted to extort additional income" from Petitioner by telling Petitioner that if he wanted copies of the discovery, he would have to pay Daly more than $1,000.00 a month. *Id.* at 19. Petitioner further alleges Daly withheld "the necessary information about switching to an [i]n forma pauperis defendant." *Id.* at 21.

Even assuming for the sake of argument trial counsel's alleged unethical behavior amounts to deficient performance, Petitioner again has failed to establish how his inability to review the discovery prejudiced his defense. Petitioner asserts he was denied the opportunity to "go over all the data and point out where there were fabrications, false data, or data

that was, in fact, gained through entrapment" and to identify

"inconsistencies, embellishments, [and] evidence that had been tampered

with." *Id.* at 21, 25. Conspicuously absent from Petitioner argument is any

reference to the existence of any false or fabricated data, or any argument

demonstrating how highlighting the false or fabricated data to his counsel

would have reasonably changed the result of the proceedings. Thus,

Petitioner has failed to establish prejudice. Accordingly, Ground Four of the

Petitioner is due to be denied.

### F. Petitioner's Ground Five

Petitioner next alleges that counsel rendered ineffective assistance

by "failing to bring up that FBI evidence examiners overstate the

significance of their analyses in state and federal cases in a report by the

D.O.J." *Id.* at 26. Petitioner argues that because FBI evidence examiners

have overstated the significance of microscopic hair analyses in state and

federal cases in the past, it follows that "the way in which . . . cyber-crimes

are investigated are based upon, almost entirely, entrapment." *Id.*

Petitioner further suggests counsel should have made the "FBI

Response Team" release the investigative techniques used in prosecuting

Petitioner in order to ascertain whether the task force violated its own operating procedure. *Id.* at 29. Finally, Petitioner asserts he was prejudiced by counsel's failure to "object to anything that the FBI or any other investigator did when going through the investigatory process" and that the failure to challenge "any cross examination, investigatory process, potential process failures, and the true potential for FBI laboratory failures with these types of investigations." *Id.* at 30.

This claim has no basis. Citing a study that purportedly found FBI forensic examiners overstated the significance of microscopic hair analysis results, Petitioner makes the extraordinary logical leap to conclude that the FBI conducts its cyber-crime investigations "almost entirely" by way of entrapment. *Id.* at 26. Petitioner's conclusion is sheer conjecture. Counsel was not deficient for failing to present this argument. Had counsel attempted to do so the Court would never have permitted counsel to offer an argument based entirely on speculation and with no relevance to this case.

Moreover, counsel's performance was not deficient for failing to launch a large-scale discovery probe into the FBI's investigative

procedures. Notably, this investigation was conducted by an officer of the PPD, working in conjunction with the ACSO, not the FBI. Further, Petitioner's assertion that the investigation might have violated operating procedure is based entirely on speculation. Finally, Petitioner's contention that his counsel failed to object to any aspect of the investigation is not accurate. As previously discussed, Daly filed a motion to dismiss on the grounds that the investigation was the result of outrageous government conduct. For these reasons, Petitioner has failed to demonstrate counsel rendered deficient performance.

And as is the case with Petitioner's other arguments, he has failed to demonstrate he was prejudiced by counsel's alleged shortcomings. He can point to no violations or flaws in the investigation, the discovery of which would have reasonably changed the outcome of his trial. He makes only the unsupported allegation that, because "there were various font sizes used in some of the evidence," the evidence was tampered with. *Id.* at 30. This conclusion is completely bereft of support. Accordingly, Petitioner has failed to meet the standard set forth in *Strickland* as to Ground Five.

### G. Petitioner's Ground Six

In his next ground for relief, Petitioner asserts Daly rendered ineffective assistance for failing to attack the indictment on the grounds of outrageous government conduct. Petitioner is wrong. As discussed previously, Daly filed a pretrial motion to dismiss on the grounds that the investigation was the result of outrageous government conduct, which the Court denied. Additionally, Petitioner makes a vague, theoretical argument that investigators may be motivated by financial incentives to entrap innocent individuals. This argument is speculative, and there is no evidentiary support for it in the record. Accordingly, Petitioner's claim in Ground Six is due to be denied.

### H. Ground Seven

Petitioner next argues he "did not receive sufficient advice from counsel to dispel confusion over entrapment as a defense." *Id.* at 36. Petitioner further asserts counsel was deficient for failing to allege First Amendment violations, claims under the Federal Tort Claims Act, and claims of false imprisonment, malicious prosecution, deceit/misrepresentation, and "bad faith qualified immunity." *Id.* at 36-40.

Case Nos.: 1:12cr12/MW/GRJ; 1:15cv156/MW/GRJ

Petitioner's claim has no merit. Although Petitioner seems to have a competent understanding of the entrapment defense, even assuming for the sake of argument that Daly's purported failure to ensure Petitioner understood the "ins and outs" of the entrapment defense amounted to deficient performance, Petitioner has failed to establish how his lack of understanding prejudiced his defense. Petitioner fails to explain how his personal understanding of the entrapment defense might have altered the outcome of the trial.

Further, although Petitioner lists a number of potential claims that he believes, in hindsight, Daly should have raised, Petitioner fails to demonstrate that any of those claims have merit. An attorney is not deficient for declining to pursue meritless claims. Thus, Daly's decision to forego asserting those defenses was the product of reasonable professional judgment, not deficient performance. And, as is the case with all of Petitioner's arguments, he cannot demonstrate prejudice. Accordingly, Ground Seven is due to be denied.

### I. Ground Eight

Petitioner next asserts Daly was ineffective for failing to object on the

grounds that the Government failed to establish an essential element of the statute used to support his conviction. Petitioner argues he could not have been convicted for traveling in interstate commerce because the vehicle he used to travel from Georgia to Florida was not a commercial vehicle. According to Petitioner, "Congress never intended for 18 U.S.C. 2423(b) to include private property of a citizen of one state to be deemed 'interstate commerce.' The sole intent of this act was to punish offenders who traveled as the statute states, to foreign countries by commercial boats, planes or rented vehicles to engage in sex with minors." Petitioner's argument is frivolous.

The statute provides, in relevant part:

(b) **Travel with intent to engage in illicit sexual conduct.** --A person who travels in interstate commerce or travels into the United States, or a United States citizen or an alien admitted for permanent residence in the United States who travels in foreign commerce, for the purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

18 U.S.C.A. § 2423(b) (West 2017). A conviction under 18 U.S.C. § 2423(b) requires proof beyond a reasonable doubt that the defendant (1) traveled to another state; (2) for the purpose of engaging in any illicit sexual conduct;

(3) with just a person under 18 years old. *See United States v. Hooks*, 353

F. App'x 320, 321 (11th Cir. 2009). Petitioner cites no legal authority for his

strained argument that traveling to another state requires traveling in a

commercial vehicle. Accordingly, Petitioner has failed to establish Daly

rendered ineffective assistance for failing to object on these grounds.

Accordingly, Petitioner is not entitled to relief as to Ground Eight.

### J. Ground Nine

In a related ground for relief, Petitioner asserts Daly was ineffective

for failing to object to the Court's "interstate commerce" instruction.

Petitioner asserts the following:

> "[T]his Court, during jury instructions, gives the following definition of "Interstate Commerce" thereby lowering the standard of proof needed for a finding of guilt: "interstate commerce is the movement or transportation of a person from one state to another state." According to this definition the jury would only have to find that Petitioner crossed state lines, when the actual definition states: "trade, commerce, transportation, or communication among the states, or between any foreign country and any state, or between any foreign country and any state, or between any state and anyplace or ship outside of the state."

(ECF No. 96 at 45.) At trial, the Court instructed the jury that "[i]nterstate

commerce is the movement or transportation of a person from one state to

another state." (ECF No. 72 at 204.) According to Petitioner, "interstate commerce" applies only to vehicles traveling interstate for non-personal use. The definition of interstate commerce, however, is not so limited. *See United States v. Maxwell*, 446 F.3d 1210, 1212 (11th Cir. 2006) (Congress has the authority to regulate: 1) the use of the channels of interstate commerce; (2) the instrumentalities of interstate commerce, or persons or things in interstate commerce; and (3) those activities having a substantial relation to interstate commerce, *i.e.*, those activities that substantially affect interstate commerce). Petitioner's narrow and strained interpretation of the definition of interstate commerce finds no support in the law. Accordingly, Petitioner has not shown that counsel's failure to object to the jury charge on these grounds was deficient and that he suffered prejudice as a result.

Petitioner further alleges Daly should have argued that Petitioner could not have traveled in interstate commerce because "he was travelling to witness and enjoy a Wiccan 'coming of age' ceremony, not to have unconsentual relations with any one that does not consent." (Doc. 96 at 46.) Whether Petitioner traveled in interstate commerce has nothing to do

with whether Petitioner intended to engage in sex with a minor.

Accordingly, Petitioner's claim in Ground Nine fails.

### K. Ground Ten

Petitioner next alleges Daly rendered ineffective assistance for failing to move to exclude Petitioner's prior convictions under Rule 412 of the Federal Rules of Evidence.

Under Federal Rule of Evidence 412 evidence that an alleged *victim* "engaged in other sexual behavior," or evidence of a *victim*'s "sexual predisposition" is inadmissible. FED. R. EVID. 412 (emphasis supplied); *see United States v. Duncan*, 855 F.2d 1528, 1533 (11th Cir. 1988). Rule 412 does not, however, apply unless the person against whom the evidence is offered can reasonably be characterized as a "victim of alleged sexual misconduct." FED. R. EVID. 412 cmt. (1994).

Petitioner is not a *victim* of alleged sexual misconduct but rather the perpetrator of sexual misconduct. And importantly, Petitioner's prior rape convictions were not introduced at trial. Accordingly, because Rule 412 had not applicability to Petitioner, he has failed to establish Daly was deficient for not invoking Rule 412. Petitioner is not entitled to relief as to Ground

Ten.

### L. Ground Eleven

Petitioner next alleges Daly rendered ineffective assistance at sentencing for failing to argue the 18 U.S.C. § 3553(a) factors[3], failing to ask for a downward departure, and failing to hire a "mitigation specialist" on Petitioner's behalf. Petitioner further alleges Daly failed to introduce evidence of Petitioner's family history of abuse and neglect, his genetic predisposition for alcoholism, and history of substance abuse and addiction. Finally, Petitioner alleges Daly demonstrated personal prejudice against him and was motivated by greed and financial gain.

The proper measure of attorney performance is simply reasonableness under prevailing professional norms considering all the circumstances. *Hinton v. Alabama, 134 S. Ct. 1081, 1088* (2014) (citations omitted). Counsel is "not required to present every nonfrivolous defense,"

---

[3] The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a). *United States v. Ikejiani*, 630 F. App'x 933, 939 (11th Cir. 2015).

Case Nos.: 1:12cr12/MW/GRJ; 1:15cv156/MW/GRJ

*Chandler v. United States*, 218 F.3d 1305, 1319 (11th Cir. 2000). Further, an attorney's decision to winnow down the possible arguments falls within the "wide range of conduct that encompasses the reasonably effective representation mandated by the Constitution." *Pitts v. Cook*, 923 F.2d 1568, 1574 (11th Cir. 1991); *see Chandler*, 218 F.3d at 1319 ("Good advocacy requires "winnowing out" some arguments, witnesses, evidence, and so on, to stress others.). Regarding mitigation, no absolute duty exists to introduce mitigating or character evidence. *Chandler*, 218 F.3d at 1319. *Strickland* requires attorneys to make a reasonable investigation into "possible mitigating factors and ma[k]e a reasonable effort to present mitigating evidence to the sentencing court." *Henyard v. McDonough*, 459 F.3d 1217, 1242 (11th Cir. 2006) (citing *Grayson v. Thompson*, 257 F.3d 1194, 1225 (11th Cir. 2001)).

A review of the sentencing transcript demonstrates Daly advanced various objections during sentencing. Daly argued that an advisory guideline sentence between 25 and 30 years is neither "fair" nor "just" based on these facts, nor is it "necessary for the purposes stated in 3553." (ECF No. 74 at 7.) Counsel further argued that Petitioner has had a clean

record for the past thirty years. *Id.* And contrary to Petitioner's assertion, counsel did ask for a downward departure from the recommended guidelines range of 292 to 360 months. Daly argued that a sentence of ten years would be sufficient but not greater than necessary to comply with the purpose of sentencing. *Id.* at 9.

Petitioner cites no authority for the proposition that counsel's failure to procure a "mitigation specialist" in a non-capital case is unreasonable under prevailing professional norms. The PSR included information regarding Petitioner's family, mental health, and substance abuse, all of which was available to the Court and considered in imposing an appropriate sentence. Petitioner has failed to show Daly's representation at the sentencing hearing was constitutionally deficient.

Further, based upon the record before the Court there is not a reasonable probability that had counsel highlighted the information in the PSR, which Petitioner contends shows mitigation, a lesser sentence would have resulted. In pronouncing the sentence, the District Judge, who had presided over Petitioner's trial and heard all of the evidence in this case, stressed Petitioner's unwavering lack of remorse in her decision to impose

a sentence at the statutory maximum. (ECF No. 74 at 14.) ("Mr. Ziolkowski continues to believe that he is innocent of the offense in this case and again, that would only add to my concern of the threat that he does pose to the community".). The introduction of additional mitigating evidence would have done nothing to alleviate the judge's concerns regarding Petitioner's lack of remorse. Thus, Petitioner has not carried his burden of showing prejudice, *i.e.*, that there is "a reasonable probability that, but for" counsel's failure to argue in mitigation, the district court would have imposed a shorter sentence. *Strickland*, 466 U.S. at 694. Accordingly, Petitioner fails to meet the standard set forth in *Strickland* as to Ground Eleven.

### M. Ground Twelve

In his final ground for relief, Petitioner alleges Daly rendered ineffective assistance for failing to "bring up" plea offers. (Doc. 96 at 55.)

The Supreme Court has long recognized that *Strickland*'s two-part inquiry applies to ineffective assistance of counsel arising out of the plea process. *Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) (citing *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). In *Missouri v. Frye*, 566 U.S. 134 (2012), and *Lafler v. Cooper*, 566 U.S. 156 (2012), the Supreme

Court clarified that the Sixth Amendment right to the effective assistance of counsel extends specifically "to the negotiation and consideration of plea offers that lapse or are rejected." *Id.*, quoting *In re Perez*, 682 F.3d 930, 932 (11th Cir. 2012) (per curiam). While the duties and responsibilities of defense counsel in the plea-bargaining process are difficult to define, as the "art of negotiation is at least as nuanced as the art of trial advocacy," defense counsel must communicate formal plea offers from the prosecution. *Carmichael v. United States*, 659 F. App'x 1013, 1021 (11th Cir. 2016) (quoting *Frye*, 566 U.S. at 144).

The Supreme Court has further concluded that, in order to establish prejudice, a defendant must show a reasonable probability that but for counsel's ineffectiveness: (1) "the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)"; (2) "the court would have accepted its terms"; and (3) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Osley*, 751 F.3d at 1222 (citing *Lafler*, 566 U.S. at 164; *Frye*, 566

U.S. at 147).

Without providing any specifics as to dates, times or circumstance Petitioner conclusorily alleges Daly failed to discuss the "conversations" he had with prosecutors and failed to share "draft plea agreements," or "emails or any type of correspondence dealing with a plea agreement." (Doc. 96 at 56.) Petitioner further alleges he "has information and belief that when Daly stated to him that Daly and the prosecutor had discussed the case outside of work (at a post-office potentially), and that plea terms were discussed in the case at bar[,] [t]he plea terms were never conveyed to Ziolkowski." *Id.* at 57. However, these bare and unsupported assertions are insufficient to demonstrate that the Government ever made a formal plea offer or tendered a plea agreement to Daly.

In his Reply to the Government's Response, Petitioner again alleges "there was a plea offer that was never proffered to Ziolkowski by his defense counsel." (Doc. 104 at 6.) In support of this claim, Petitioner provides the sworn affidavit of his wife, Gail Ziolkowski, in which she states: "Mr. Daly told me that he turned the plea deal down because it was a[n] offer for 15 years, and the maximum sentence was going to be 15 years as

per the U.S. Guidelines. I spoke with the Defendant, my husband, and he told me that he knew nothing about a rejected plea agreement." *Id.* at 13.

This speculative statement (again with no specific references to time, place, dates, etc.) fails to provide support for Petitioner's claim. Notably, the Court takes judicial notice of the fact that the U.S. Attorney's Office in the Northern District of Florida, as a matter of policy, does not enter into plea agreements recommending a specific sentence, and has not done so for the past twenty-five years. Further, Gail Ziolkowski's contention that Daly rejected the fifteen-year plea offer because Petitioner faced a maximum sentence of fifteen years under the guidelines is controverted by the record. Petitioner faced a guidelines range of 292 to 365 months. (ECF No. 42 at 74.) Thus, Petitioner's maximum sentence under the applicable guidelines range was more than thirty years.[4]  Finally, in Response to Petitioner's Motion to Vacate, the Government confirms that no plea offer was made, and thus there was nothing for Daly to convey. *See* ECF No. 100 at 32 ("there is no evidence that a plea offer was made by the Government"). For

---

[4] The applicable guidelines range became 292-360 months because the statutorily authorized maximum sentence was less than the maximum of the applicable guidelines range.

Case Nos.: 1:12cr12/MW/GRJ; 1:15cv156/MW/GRJ

these reasons, Gail Ziolkowski's affidavit does not establish the existence of a formal plea offer or plea agreement from the Government. Thus, there is no evidence that Daly failed to convey a formal offer.

Finally, Petitioner alleges that Daly said to him: "If you take the plea they offer, they agree not to bring up the age of the intended victim, so that's good." (Doc. 96 at 56.) The suggestion that the Government would not "bring up" the age of the intended victim cannot fairly be characterized as a plea offer, nor is it sufficient to demonstrate that a separate, unconveyed offer existed. Assuming for the sake of argument that agreeing not to bring up the age of the intended victim was a term of the plea agreement, Petitioner cannot demonstrate the plea offer would have been presented to the Court and the Court would have accepted its terms. Because the child's age was an element of the charge in the indictment, and not a sentence factor under the Guidelines, Petitioner could not have pleaded guilty to the charge without acknowledging the intended victim's age. For these reasons, this claim is meritless.

Petitioner has failed to establish his counsel rendered ineffective assistance for failing to convey a plea agreement to him or that Daly was

ineffective for failing to involve Petitioner in plea negotiations. And because there is not one scintilla of evidence that any plea offer was ever conveyed as to a lesser sentence, Petitioner cannot show prejudice. Accordingly, Petitioner has failed to meet the standard set forth in *Strickland* as to Ground Twelve.

### N. Evidentiary Hearing

To warrant an evidentiary hearing, a defendant must allege facts that, if true, would prove he is entitled to relief. Petitioner has failed to do so here. Accordingly, his request for an evidentiary hearing is denied.

### III.   CONCLUSION

For all of the foregoing reasons, the Court concludes that Petitioner has not shown that he is entitled to Section 2255 relief. Nor has he shown that an evidentiary hearing is warranted. Therefore, Petitioner's Motion should be denied.

### CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued

"the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), § 2255 Rules.

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the Court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED** that:

1.     The Second Amended Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a person in Federal Custody" (ECF No. 96) should be **DENIED**.

Case Nos.: 1:12cr12/MW/GRJ; 1:15cv156/MW/GRJ

2.      A certificate of appealability should be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this 19th day of September, 2017.


*/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.

Case Nos.: 1:12cr12/MW/GRJ; 1:15cv156/MW/GRJ